# IN THE OREGON TAX COURT

GILBERTSON et al
*v.*
DEPARTMENT OF REVENUE
(TC 2276)

Miles Sweeney, Portland, represented plaintiffs.

Marilyn Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered October 8, 1985.

**CARL N. BYERS, Judge.**

Plaintiffs appeal the value of land used as a parking lot. Located on the corner of Southwest 12th and Main in downtown Portland, the 12,500-square-foot lot is on grade level adjacent to an office building. Plaintiffs contend that the defendant, which determined that the property has a fair market value of $325,000 ($10,000 more than on the assessment roll), is in error and that the true cash value of the subject lot is not more than $96,000.

The wide disparity between the position of the parties can be attributed for the most part to the zoning restrictions on the property. The city has taken several steps to revitalize its downtown area, one of which is to enact an RXZ zone. The stated purpose of this zone is set forth in the city ordinance 33.36.020 as follows:

"Purpose. (Amended by Ord. No. 150581; effective Jan. 1, 1981.): The RX Downtown Multi-family Residential Zone is intended to provide regulations governing use and development for a mixture of apartment residential and institutional

uses, together with appropriate office and retail activities serving the residents of the Zone as well as complementing nearby downtown retail and office uses." (Defendant's Exhibit A, last page.)

Although a precursor to the RX zone was enacted in 1978 as an AXZ zone and then modified to the RXZ zone in 1981, the evidence from both parties indicates that the market has been slow to adapt to the zoning limitations.[1] Except for government subsidized housing or developments, no new apartments or residential complexes have been constructed since the imposition of the zoning restrictions. The prevailing economic and market conditions make building or improving the land questionable. Plaintiffs' witness, Mr. Kerr, stated more strongly that anyone who built residential apartments "would get an award" but also go broke.

Plaintiffs, in presenting their case, relied primarily upon the testimony of Andrew Kerr, an experienced real estate attorney and one of the owners of the subject property. Mr. Kerr recognized that economic development of the property was not feasible as of January 1, 1983, and that the parking lot could not be used as a commercial (hourly) lot. He therefore developed an income approach assuming use of the parking lot for monthly parking. Based on this analysis, he concluded that the property had a fair market value of $96,000.

Also testifying for plaintiffs was Mr. Charles C. Dawell, an experienced real estate appraiser. Mr. Dawell acknowledged the difficulties involved in properly reflecting the effect of the zoning restrictions. Mr. Dawell considered three comparable sales of his own and four of the defendant's comparable sales. Two of Mr. Dawell's comparable sales were improved properties requiring the use of the residual approach. His other sale, plus three of the county sales, he adjusted by 50 percent. Mr. Dawell's opinion was that the subject property had a true cash value of $196,125 plus $10,000 for the blacktop, or a total of $206,125. Mr. Dawell's opinion

---

[1] In Mr. Gambee's report he indicates that "[t]here is general agreement in the Professional Real Estate Community that the creation of the RXZ zone adjacent to the Portland core area (including the subject location) was an attempt at social engineering that had no relationship to the market." (Exhibit A, at 1.) Gambee further admitted in testimony that the area was stagnant in its economic development.

can be given little weight due to the size of the adjustments and the inherent weakness of the residual method. In his testimony, he conceded that he had to "squeeze" the data in order to work with it because of the zoning restrictions and lack of better data.

Defendant's appraiser relied solely on the market comparison approach. Two of his five comparable sales are not valid comparisons due to the small size of one and the influence of government subsidies on the other. The remaining three comparable sales are all used as commercial parking lots. The RXZ zone prohibits parking lot use per se, but the commercial parking lots (comparable sales Nos. 1, 2 and 5) and the subject (monthly parking) are allowed to continue as nonconforming uses. Although there was no evidence on the point, plaintiffs assume and logic affirms that the commercial lots have a higher income and therefore a higher potential value. If this is so, can property which is used as a commercial parking lot be compared to a property whose highest legal use is as a monthly parking lot? Plaintiff contends that commercial parking lots are a higher and better use and not comparable to the subject. Mr. Dawell, testifying for plaintiffs, did not reject defendant's sales for that reason, but adjusted them substantially for the difference in potential use.

Defendant's appraiser found that bare land in the downtown area regularly sells for parking lot use. However, his analysis of the sales prices indicates that the rate of return received by purchasers will vary from one-half percent to three percent. Since this is not a prudent investment, Mr. Gambee concludes that parking lot use is an interim use only and purchasers are holding such properties for speculation or future development. Thus, the commercial lots and monthly lots are comparable because they constitute the competition or available substitutes under the market approach. Defendant submitted no evidence as to the difference in income potential or value, but treated commercial parking lots as comparable to the subject.

In weighing the evidence, the court has come to the following conclusions: that use of vacant land as commercial parking lots is an interim use and that defendant's comparable sales are an indication of value of the subject property. While the court is left with the impression that the subject

property may have less value than the comparables because it cannot be used as a commercial parking lot, there is no evidence or factual basis to determine how much less. If the plaintiff's estimated income figures for the subject property are accurate and the defendant's analysis of return on parking lots correct, the difference is not substantial.[2] Even if either of those two factors is not correct, plaintiffs failed to adduce evidence showing any difference in value between commercial lots and monthly lots. The opinion and order of the Department of Revenue shall be affirmed. Defendant shall recover costs.

---

[2] Mr. Kerr estimated a net annual income to the subject of $9,600, which he capitalized at 10 percent, for an indicated value of $96,000. If that same income is capitalized at three percent, the rate of return Mr. Gambee finds for parking lots, the indicated value is $320,000.